# In the United States Court of Federal Claims

|  |  |
|---|---|
| NATHAN STRONG,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | No. 24-1537<br>Filed November 13, 2025 |

Nathan Strong, Alexandria, Virginia, plaintiff, pro se.
Blake W. Cowman, Civil Division, United States Department of Justice, Washington, DC, for defendant.

**OPINION AND ORDER**
**Granting the government's motion to dismiss**

Nathan Strong, proceeding without an attorney, seeks damages for an alleged breach of a settlement agreement with the U.S. Office of Special Counsel from when he was employed in that office. The government moves to dismiss Mr. Strong's complaint for lack of jurisdiction based on the choice of forum and order of filing suit, and for failure to state a claim, arguing that the complaint does not establish that the special counsel breached any duty required by the settlement agreement and that he does not allege facts that would state a claim for civilian pay. This court has jurisdiction over Mr. Strong's breach-of-contract allegations. But because the complaint does not plausibly allege a breach of contract or otherwise state a claim for which this court can grant relief, and other allegations belong at the Merit Systems Protection Board, the court will grant the government's motion to dismiss.

**I.   Background**

Mr. Strong worked for the Office of Special Counsel in an information technology position. ECF No. 16 at 2 [¶1]. On June 3, 2022, the office proposed removing him from his position. *Id.* at

1

34 [¶6].[1] Mr. Strong filed an appeal at the Merit Systems Protection Board (MSPB). *Id.* at 34 [¶7]. Mr. Strong and his office signed a settlement agreement less than two months later, on July 15, 2022. *Id.* at 36. In the settlement agreement, Mr. Strong agreed to dismiss the MSPB appeal and "any and all claims … arising out of [his] employment with [the Office of Special Counsel] up until the effective date of this settlement agreement." *Id.* at 34 [¶1]. The office agreed that (1) Mr. Strong would be returned to "duty status effective immediately"; (2) the office would rescind the June 2022 performance appraisal; (3) Mr. Strong would remain "unrated for at least the first 90 days following his return to duty status"; (4) Mr. Strong would be rated "as soon as practicable after 90 days from his return to duty" by his supervisor or the chief information officer; and (5) the office would withdraw the proposed removal contained in the June 2022 performance appraisal. *Id.* at 34 [¶¶2-6]. Mr. Strong resigned from the agency later that year, in November 2022. ECF No. 18-1 at 26. Mr. Strong alleged that he was constructively discharged. *Id.*

Mr. Strong filed suit in this court on September 27, 2024 (ECF No. 1 at 1), has since amended his complaint (ECF No. 16), and has proposed amending his complaint several times after that (ECF Nos. 26, 28, 31, 40). In his first amended complaint, Mr. Strong alleges that the special counsel breached the July 2022 settlement agreement; engaged in fraudulent inducement, fraudulent misrepresentation, negligent misrepresentation, negligent administration of contractual obligations, and unjust enrichment; failed to pay him overtime and modified his sick leave without his authorization; and violated his due process rights. ECF No. 16.

Mr. Strong filed a complaint in the U.S. District Court for the District of Columbia on the same day he filed in this court. ECF No. 18-1 at 1.

---

[1] Mr. Strong attached exhibits to his amended complaint (ECF No. 16). Some of the exhibits do not have separate pagination. The court will therefore cite the pagination generated by the court's electronic case filing system for all those exhibits.

Mr. Strong seeks $291,025 in damages, a declaratory judgment, and equitable relief. ECF No. 16 at 31-33.

## II. Discussion

The government moves to dismiss Mr. Strong's complaint under rules 12(b)(1) and 12(b)(6) of the Rules of the Court of Federal Claims (RCFC). ECF No. 18 at 1, 7-8, 21. The government argues that this court lacks jurisdiction over Mr. Strong's breach-of-contract claims because those claims belong exclusively at the MSPB; lacks jurisdiction over tort claims, unjust enrichment claims, and due process claims generally; and lacks jurisdiction over this case because Mr. Strong's filing a district court suit on the same day divests this court of jurisdiction under 28 U.S.C. § 1500. *Id.* at 8. The government alternatively argues that Mr. Strong's complaint fails to state a claim for breach of contract because Mr. Strong does not allege that the office breached any duty required by the settlement agreement or that he suffered any damages from the alleged breach. *Id.* at 21. And the government argues that Mr. Strong's complaint fails to state a claim for civilian pay. *Id.* at 28.

The jurisdiction of this court is primarily defined by the Tucker Act, which provides the court with jurisdiction over "any claim against the United States founded … upon any express or implied contract with the United States." 28 U.S.C. § 1491(a)(1). A "plaintiff bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence." *Estes Express Lines v. United States*, 739 F.3d 689, 692 (Fed. Cir. 2014). This court has traditionally held the pleadings of a pro se plaintiff to a less stringent standard than those of a litigant represented by counsel. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (stating that pro se complaints "however inartfully pleaded are held to less stringent standards than formal pleadings drafted by lawyers" (marks omitted)). The court has therefore exercised its discretion in this case to examine the pleadings "to see if [the pro se] plaintiff has a cause of action somewhere displayed." *Ruderer v. United States*, 188 Ct. Cl.

456, 468 (1969). Regardless, pro se plaintiffs still have the burden of establishing the court's jurisdiction by a preponderance of the evidence. *See Landreth v. United States*, 797 F. App'x 521, 523 (Fed. Cir. 2020) (citing *Kelley v. Secretary of the Department of Labor*, 812 F.2d 1378, 1380 (Fed. Cir. 1987)).

Rule 12(b)(6) requires a plaintiff to bring a claim on which this court can grant relief. On a motion to dismiss under rule 12(b)(6), the court must accept well-pleaded factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002). The court need not accept the parties' legal conclusions as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). "A complaint must be dismissed under Rule 12(b)(6) when the facts asserted do not give rise to a legal remedy, or do not elevate a claim for relief to the realm of plausibility." *Laguna Hermosa Corp. v. United States*, 671 F.3d 1284, 1288 (Fed. Cir. 2012) (citing *Lindsay*, 295 F.3d at 1257, and *Iqbal*, 556 U.S. at 679).

### A. This court can exercise jurisdiction over Mr. Strong's breach-of-contract claim

The government argues that 28 U.S.C. § 1500 deprives this court of jurisdiction over the complaint. *See* ECF No. 18 at 16-21. The government also argues that the court lacks jurisdiction over the specific subject matter of Mr. Strong's complaint, arguing that any breach-of-contract claim cannot be heard here because it belongs at the MSPB and that other related claims are tort claims or otherwise do not fall within this court's jurisdiction. ECF No. 18 at 7-16.

Section 1500 states that this court "shall not have jurisdiction of any claim for or in respect to which the plaintiff … has pending in any other court any suit or process against the United States." 28 U.S.C. § 1500. The statute thus divests the court of jurisdiction if "an earlier-filed suit or process [is] pending in another court" and "the claims asserted in the earlier-filed case are for

or in respect to the same claim(s) asserted in the later-filed Court of Federal Claims action." *Brandt v. United States*, 710 F.3d 1369, 1374 (Fed. Cir. 2013) (quotation marks omitted). The government argues that, because Mr. Strong filed related suits in this court and in the district court on the same day, the court should presume that the suit in the district court was "pending" when he filed suit here, depriving this court of jurisdiction. ECF No. 18 at 16-21.

When evaluating whether section 1500 applies to two cases filed on the same day, this court has taken a literal approach. A case filed elsewhere is considered pending only if it was filed before the complaint was filed in this court. The court looks to when on that day each case was filed. *E.g.*, *Kaw Nation of Oklahoma v. United States*, 103 Fed. Cl. 613, 615, 634 n.37, 635 (2012) (holding that section 1500 did not apply because the parties stipulated that the complaint in this court was filed earlier in the day than the district court case); *United Keetoowah Band of Cherokee Indians in Oklahoma v. United States*, 104 Fed. Cl. 180, 181, 189 (2012) (holding that section 1500 did not apply because "[i]t is undisputed that Plaintiff filed its complaint in this Court approximately four hours before filing in federal district court"); *International Federation of Professional and Technical Engineers v. United States*, 111 Fed. Cl. 175, 180-81 (2013). Only "where it is not possible to determine the exact sequence of filing" has the court applied a different, per se, rule and treated a same-day filing in district court as "pending" for purposes of this court's jurisdiction. *Coeur d'Alene Tribe v. United States*, 102 Fed. Cl. 17, 26 (2011).

Mr. Strong filed his complaint in the district court on the same day as he filed his complaint here. ECF No. 18-1 at 1. Neither party has shown the order in which Mr. Strong filed the two complaints. The government also has not shown that the filing times are unknowable. The court at times has given a pro se plaintiff an opportunity to show the order in which he or she filed the two suits, rather than presuming that the court lacks jurisdiction. *Berry v. United States*, 86 Fed. Cl. 24,

5

29-30 (2009). For purposes of the government's motion to dismiss, then, neither party has demonstrated the order of filing, and the court will not dismiss Mr. Strong's suit for lack of jurisdiction under 28 U.S.C. § 1500.[2]

On the subject matter of the suit, this court can exercise jurisdiction over Mr. Strong's breach-of-contract claim. The Tucker Act gives this court jurisdiction to hear claims founded upon express contracts with the United States. *Hercules Inc. v. United States*, 516 U.S. 417, 423 (1996). "[I]n a contract case, the money-mandating requirement for Tucker Act jurisdiction normally is satisfied by the presumption that money damages are available for breach of contract, with no further inquiry being necessary." *Holmes v. United States*, 657 F.3d 1303, 1314 (Fed. Cir. 2011). The government argues that this court cannot address other issues that Mr. Strong raises, including claims of unjust enrichment and due process violations. ECF No. 16 at 23-25 [¶¶44-55], 27-28 [¶¶64-72]. Mr. Strong's unjust enrichment claim is tied to his allegations of breach of contract; he alleges a breach of clauses 13 and 17 of the settlement agreement as the source of the enrichment. *Id.* at 27 [¶¶66-67]. Mr. Strong likewise alleges a due process violation under clause 17 of the settlement agreement. *Id.* at 23-24 [¶¶45-49]. Both fall under the breach-of-contract claim. The

---

[2] It is not clear, if two cases were in fact filed simultaneously, that jurisdiction in this court would be precluded. The statute states that only a later-filed Court of Federal Claims case is affected. *See* 28 U.S.C. § 1500; *Tecon Engineers, Inc. v. United States*, 343 F.2d 943, 949 (Ct. Cl. 1965) ("The clear meaning and legislative intent of [the earlier version of section 1500] was to prevent this court from taking jurisdiction of a claim *only* when the same plaintiff already 'shall have commenced and has pending' another suit on the same claim in another court." (emphasis in original, quoting earlier version of the statute and explaining that later changes in phraseology did not change the meaning)); *see also Ute Indian Tribe of the Uintah & Ouray Indian Reservation v. United States*, 99 F.4th 1353, 1375 (Fed. Cir. 2024); *but see United States v. County of Cook*, 170 F.3d 1084, 1091 (Fed. Cir. 1999). Nor is it clear that this court is necessarily correct in taking the approach that the precise time of filing matters, as opposed to considering same-day filing as simultaneous. *See Astornet Technologies, Inc. v. BAE Systems, Inc.*, 802 F.3d 1271, 1274 (Fed. Cir. 2015) (describing two cases filed on the same day as "simultaneous" for purposes of section 1500).

government's other arguments are tied up with the arguments that Mr. Strong fails to state a claim, so the court will address any claims that fall outside the breach-of-contract context below.

> **B.     Mr. Strong's amended complaint fails to state a breach-of-contract claim upon which relief can be granted**

To allege a breach of contract, Mr. Strong must plead that the government breached an obligation stemming from a contract with the government and that the damages he requests were caused by that breach. *San Carlos Irrigation & Drainage District v. United States*, 877 F.2d 957, 959 (Fed. Cir. 1989).

> **1.     Mr. Strong has not plausibly alleged a breach of any of the terms of the settlement agreement**

The settlement agreement between Mr. Strong and the government includes five promises by the government and seven mutual agreements by both parties. ECF No. 16 at 34-35 [¶¶2-6, 12-18]. At the motion-to-dismiss stage, "the court must interpret the contract's provisions to ascertain whether the facts plaintiff alleges would, if true, establish a breach of contract." *Bell / Heery v. United States*, 739 F.3d 1324, 1330 (Fed. Cir. 2014). Mr. Strong has not plausibly alleged that the government failed to comply with any of its obligations under the settlement agreement.

The government's first promise was to immediately return Mr. Strong to duty status. ECF No. 16 at 34 [¶2]. Mr. Strong concedes that the government immediately returned him to duty status. ECF No. 27 at 13.

The government's next four promises were that the government would rescind the June 2022 performance appraisal, that it would withdraw the proposed removal contained in that appraisal and issue a letter of counseling, that it would leave Mr. Strong unrated for at least 90 days following his return to duty status, and that his supervisor or the chief information officer would rate him as soon as practicable after that 90 days. ECF No. 16 at 34 [¶¶3-6].

7

Mr. Strong states that the June 2022 performance appraisal was "formally withdrawn." ECF No. 27 at 33. But he argues that the office documented his performance after he returned, before the 90-day waiting period was over, which was a "functional replacement for the rescinded performance appraisal." *Id*. He argues that the documentation violated the requirement to leave him unrated for 90 days, and he argues that government officials other than his supervisor or the chief information officer were involved in the process of reviewing his work before he resigned, 126 days after his reinstatement. *Id.* at 34-35. He also alleges that he was given new duties when he returned to the office, in violation of the terms of the settlement agreement. ECF No. 16 at 10-11 [¶¶17-18].

Mr. Strong's complaint fails to state a claim because none of his allegations plausibly show that the government breached the settlement agreement. The documentation he relies on is neither plausibly a reinstatement of the rescinded performance appraisal nor a premature performance rating; it is a performance plan. *See* ECF No. 16 at 51; ECF No. 1-1 at 11-13 (original complaint). A performance plan is different from a performance rating or appraisal. *See* ECF No. 16 at 38-41 (separately laying out the elements of a performance plan and the elements of a rating / appraisal). A performance plan sets out the terms under which an evaluation can later be made, rather than effectuating a change in an employee's status. *Id.* at 39-40 (explaining that a performance plan includes standards based on the "requirements of the position"); *id.* at 42-43 (explaining that appraisals and ratings are used for determining awards, promotions, reassignments, and other changes in employment status); *see Harris v. Securities & Exchange Commission*, 972 F.3d 1307, 1311 (Fed. Cir. 2020) (describing a performance plan as an opportunity for an employee to "demonstrate acceptable performance" based on set criteria, which are later rated on a scale). Mr.

8

Strong's performance plan (ECF No. 1-1 at 11-13) did not address Mr. Strong's work; it only gave the benchmarks he was expected to meet.

The parties' agreement did not prohibit the government from using a performance plan for 90 days after rescinding the June 2022 performance appraisal; it prohibited the government from giving a rating for those 90 days. ECF No. 16 at 34 [¶¶3-6].

Mr. Strong also argues that office employees circulated his earlier performance plan, from before June 2022, breaching the government's agreement by both rating him early and imposing the old June 2022 performance appraisal that was supposed to have been withdrawn. ECF No. 27 at 25, 33-35; *see* ECF No. 1-1 at 11-13. An old performance plan was also not a rating. It only listed the requirements of the position and said nothing about Mr. Strong's having met or not met those requirements. Likewise, Mr. Strong argues that the government's bringing him back in a probationary status amounted to a breach of the settlement agreement. ECF No. 16 at 5; ECF No. 27 at 36-37. But the settlement agreement did not prohibit bringing him back in a probationary status; it prohibited imposing an early rating or appraisal during the first 90 days. Mr. Strong alleges no facts that would show that the government rated him within the first 90 days, failed to withdraw older ratings, or otherwise breached those terms of the settlement agreement.

Mr. Strong argues that the government breached the requirement that his supervisor or the chief information officer eventually be the person to rate him after the first 90 days. ECF No. 27 at 34-35. He argues that others participated in an appraisal. *Id.* Mr. Strong states that his performance appraisal was "finalized" on November 7, 2022, by Ammar Ahmad, chief information officer, pointing to a draft evaluation that was emailed both that day and the following day. *See* ECF No. 16 at 12, 52-53; ECF No. 27-1 at 64. But, as the government notes (ECF No. 30 at 10-11), Mr. Strong resigned before the government issued any post-settlement rating or appraisal. ECF No.

9

18-1 at 26 (showing a resignation effective November 18, 2022); ECF No. 27 at 49 (Mr. Strong noting his "absence of a valid performance evaluation"). Mr. Strong points to no facts other than the draft evaluation that was circulated. The existence of a draft evaluation does not support the claim that the government issued Mr. Strong a post-settlement rating at all, by someone permitted to issue a rating or not. Thus, Mr. Strong fails to state a claim that any government official rated him after the settlement agreement.[3]

Mr. Strong also alleges that the government's conduct after he returned breached two of the seven mutual agreements of the settlement agreement: clause 13's requirement to "execute the terms of this Agreement in good faith" and clause 17's incorporation of statutory provisions and agency regulations. ECF No. 16 at 4, 5; *id.* at 35 [¶¶13, 17]. Mr. Strong alleges that his modified duties and probationary status both violated clause 13's duty of good faith and fair dealing. *Id.* at 5, 19-20, 26. And he alleges that the performance plan and recorded unauthorized leave violated a number of statutory and regulatory protections, protections that were guaranteed by clause 17.

The duty of good faith and fair dealing does not create duties outside those stated in the contract. *Precision Pine & Timber, Inc. v. United States*, 596 F.3d 817, 831 (Fed. Cir. 2010). None of Mr. Strong's allegations are tethered to the promises the government made regarding his reinstatement. ECF No. 16 at 34-35 [¶¶2-6, 12-18]; *cf. Centex Corp. v. United States*, 395 F.3d 1283, 1305-06 (Fed. Cir. 2005) (holding that the government violated the implied duty of good faith and

---

[3] The documents at issue in the court's analysis—the settlement agreement and the performance plan—are attached to Mr. Strong's amended complaint. *See* ECF No. 16 at 34-36 (settlement agreement); *id* at 37-43 (government directive for performance management program); *id.* at 51-54 (correspondence regarding performance plan and plan criteria); *see also* ECF No. 1-1 at 11-13 (performance plan attached to original complaint). The court can and must address the attached and incorporated documents, even at the motion-to-dismiss stage. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

10

fair dealing by rescinding a benefit explicitly guaranteed by the contract). The settlement agreement does not require keeping Mr. Strong's duties exactly as they were before, nor does it prohibit putting Mr. Strong on probation. Because Mr. Strong does not point to any obligation under the settlement agreement that the government failed to meet, Mr. Strong cannot separately prove a violation of the duty of good faith and fair dealing under clause 13.

Mr. Strong argues that clause 17 of the settlement agreement incorporates all statutes and regulations, such as regulations governing performance appraisal standards, sick leave, and the Privacy Act. ECF No. 16 at 3-4, 10; ECF No. 27 at 31-32, 37-38. He argues that the government's conduct breached that clause by violating those standards. Clause 17 states that the agreement does not supersede other rights or liabilities created by statute "relating to (1) classified information, (2) communications to Congress, (3) the reporting to an Inspector General of a violation of any law, rule, or regulation, or mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety, or (4) any other whistleblower protection." ECF No. 16 at 35 [¶17] (quoting 5 U.S.C. § 2302(b)(13)). That clause incorporates certain provisions of 5 U.S.C. § 2302(b)(13), "a provision of the Whistleblower Protection Act," relating to reporting misconduct. *Rosario-Fabregas v. Department of the Army*, No. 23-2170, 2024 WL 1517358, at *1 (Fed. Cir. Apr. 9, 2024). Its provisions must be incorporated into government nondisclosure agreements. 5 U.S.C. § 2302(b)(13). Mr. Strong does not allege a violation of the Whistleblower Protection Act. *See* ECF No. 27 at 37-38. Because clause 17 does not incorporate the other regulations Mr. Strong cites, he has not plausibly alleged that the government breached that clause. And, as discussed below, allegations that the government violated statutory obligations unrelated to the settlement agreement belong at the MSPB.

### 2. The settlement agreement does not contemplate money damages in the event of a breach

Even if Mr. Strong could allege a breach of the settlement agreement, the agreement contains no money mandate. Mr. Strong alleges that the government breached terms of the agreement related to his performance evaluation and breached the agreement by constructively terminating him. Contractual language with the government "triggers liability only if it can be fairly interpreted as mandating compensation by the Federal Government." *Holmes v. United States*, 657 F.3d 1303, 1309 (Fed. Cir. 2011) (quotation marks omitted). If an agreement's requirements fall within the scope of "purely non-monetary relief," the court ordinarily cannot provide damages. *See Mata v. United States*, 118 Fed. Cl. 92, 97-8 (2014) (internal citations omitted). In *Mata*, this court noted that a settlement agreement provision requiring the Army to transfer or reassign the plaintiff did not require monetary relief, putting the agreement outside Tucker Act jurisdiction. *Id.* The same is true here, where the agreement's terms address only non-monetary actions like performance evaluations.

Mr. Strong's alleged damages based on the loss of his job flow from his choice to resign, not any alleged breach. Mr. Strong notes that he has suffered diminished earning potential in part due to "the absence of a valid performance evaluation." ECF No. 27 at 47, 49. But Mr. Strong chose to resign before the government ever issued a new performance rating under the terms of the settlement agreement. ECF No. 18-1 at 26. Thus, any damages from his loss of a job or his lack of a new performance rating were caused not by government action but by his resignation. In *Zulueta v. United States*, No. 09-681, 2013 WL 363389 (Fed. Cl. Jan 29, 2013), this court confronted a related situation. There, the plaintiff and the government signed a settlement agreement involving harassment allegations the plaintiff had made against other employees. *Id.* at *1. The plaintiff was later removed from her position after the government met its obligations under the

settlement agreement. *Id.* at *1-2. This court held that the plaintiff had not stated a claim on which the court could grant relief because any damages were caused not by a breach of the settlement agreement but by her removal. *Id.* at *7. The same is true here, where Mr. Strong chose to resign rather than receiving a performance evaluation. Mr. Strong cannot show that a "breach is a substantial causal factor" in any damages he has incurred. *Indiana Michigan Power Co. v. United States*, 422 F.3d 1369, 1373 (Fed. Cir. 2005).

### C. Mr. Strong waived his claims about a timesheet alteration that occurred before he signed the settlement agreement

Mr. Strong brings one claim based on events that happened before he signed the settlement agreement. Mr. Strong asserts that he is owed pay for June 2, 2022, and that his supervisor changed his timesheet to avoid providing that pay. ECF No. 16 at 17 [¶15], 20-22 [¶¶28-36]; ECF No. 27 at 45-47.

The June date occurred before Mr. Strong and the government signed their settlement agreement. The settlement agreement five days later waived all claims for events that had already occurred. ECF No. 16 at 34 [¶7] ("Mr. Strong agrees to waive any and all rights, interest, and claims to file any complaints or take any action against [the Office of Special Counsel] or its employees."). The Federal Circuit has held that a "clear waiver of appeal rights in a settlement agreement is enforceable" for claims "stemming from events occurring prior to the entry of the agreement." *Ziegler v. Department of the Interior*, No. 22-1182, 2022 WL 1435385, at *4 (Fed. Cir. May 6, 2022). Thus, Mr. Strong's complaint fails to state a claim for withheld pay on June 2, 2022.

### D. Mr. Strong fails to state a claim for fraudulent inducement

Mr. Strong also alleges fraudulent inducement. Fraudulent inducement is a state-law tort claim with different elements for different states, but it always requires proving at least that there was a misrepresentation that was either fraudulent or material and that the plaintiff was justified

13

in relying on the misrepresentation. *See Rhone-Pulenc Agro, S.A. v. DeKalb Genetics Corp*, 272 F.3d 1335, 1344 (Fed. Cir. 2001) (relying on North Carolina law), *vacated on other grounds by DeKalb Genetics Corp. v. Bayer CropScience S.A.*, 538 U.S. 974 (2003), *reinstated by* 345 F.3d 1366, 1370 (Fed. Cir. 2003); *Badgley v. United States*, 31 Fed. Cl. 508, 514 (1994) (citing Restatement (Second) of Contracts § 164 (1981)).

Mr. Strong alleges that he would not have entered into the settlement agreement if he had been aware that the same government officials involved in his proposed removal were negotiating the contract. ECF No. 16 at 15 [¶8]; ECF No. 27 at 59-60. Mr. Strong opposes the involvement of those government officials because he alleges that they permitted a false instance of unreported sick leave and unlawful docking of his pay leading up to the settlement agreement. ECF No. 27-1 at 60; ECF No. 16 at 15-16 [¶¶8-10]; ECF No. 27 at 46, 59.

Taking Mr. Strong's allegations as true, he does not allege a misrepresentation as to whom he was contracting with before he entered into the agreement. When agreeing to settle with his government employer, Mr. Strong was necessarily aware that he was contracting with the same government entity that had proposed his removal. Mr. Strong does not allege that he was ever led to believe otherwise during the negotiations. *See E & I Global Energy Services, Inc. v. United States*, 144 Fed. Cl. 508, 514-15 (2019) (dismissing a fraudulent inducement claim under RCFC 12(b)(6) because there was no plausible allegation of misrepresentation), *aff'd* No. 22-1472, 2022 WL 17998224 (Fed. Cir. Dec. 30, 2022). And regardless, he knew he was contracting with the federal government. His complaint therefore fails to plausibly allege that there was any government misrepresentation in forming the settlement agreement.

### E.   Mr. Strong raises arguments that should be brought to the MSPB, fails to state a claim for post-agreement overtime work, and relies on citations that are incorrect or non-existent

Mr. Strong makes other allegations: retaliatory performance appraisal, flaws in the performance evaluation process, and constructive discharge. ECF No. 16 at 4-5; ECF No. 27 at 8-9. He also alleges unpaid overtime on an unspecified date in October 2022. ECF No. 16 at 22-23 [¶¶37-43]; ECF No. 27 at 45-47.

Other than the overtime, to the extent that those disputes do not arise from his settlement agreement with the government, the Civil Service Reform Act and related statutes provide the MSPB with exclusive jurisdiction to hear them. Disputes about performance appraisals, timesheets, and constructive discharge fall under the MSPB's jurisdiction. *See* 5 U.S.C. §§ 4303(b)(1), (e) (providing the MSPB with jurisdiction over appeals related to negative performance evaluations); *id.* §§ 7512, 7513 (providing the MSPB with jurisdiction over constructive discharge claims).

The Supreme Court in *United States v. Fausto*, 484 U.S. 439, 455 (1988), held that the Civil Service Reform Act "established a comprehensive system for reviewing personnel action taken against federal employees" and that that system precluded review of covered issues in this court. *See also Romero v. United States*, 38 F.3d 1204, 1211 (Fed. Cir. 1994). The MSPB is the exclusive venue for raising those claims. *Fausto*, 484 U.S. at 448. And the Tucker Act withdraws this court's jurisdiction when the MSPB has jurisdiction. *Id.* at 454; *Worthington v. United States*, 168 F.3d 24, 26-7 (Fed. Cir. 1999) ("[W]here the Board has jurisdiction over a claim, this court has held that the Claims Court does not.").

Mr. Strong argues that in his MSPB appeal, the MSPB declined jurisdiction over claims arising from the settlement agreement and stated that "'such claims must be brought in another forum.'" ECF No. 27 at 29. This quote does not appear in the MSPB's decision. *See Strong v.*

15

*Office of Special Counsel*, No. DC-1221-23-0052-W-1, 2023 MSPB LEXIS 106 (Jan. 9, 2023). Instead, the MSPB made clear that Mr. Strong had brought his claim in the wrong case but could seek review of the agreement at the MSPB, in an appropriate case. *Id.* at *31 ("To the extent the appellant contends the earlier settlement agreement was void and invalid ab initio, and he intends to litigate the lowered performance rating, proposed removal and any loss of pay on the merits, he may consider filing a petition for review of the initial decision in Docket # DC-3443-23-0052-I-1.").

The incorrect quote from the MSPB proceedings is not an isolated problem; Mr. Strong relies on several nonexistent cases or made-up quotations throughout his briefs. For instance, Mr. Strong attributes two statements to *Stovall v. United States*, 71 Fed. Cl. 696 (2006), a case from this court. ECF No. 27 at 17, 20. Neither of those statements appears in the case. Mr. Strong also cites *Stovall* for support that this court has jurisdiction over settlement agreements not entered into the MSPB record, even though the court's opinion did not discuss MSPB jurisdiction. ECF No. 27 at 68, 74; *see Stovall*, 71 Fed. Cl. at 697-98; *see also* ECF No. 30 at 7 n.6 (government pointing out other case citations that do not have anything to do with the subject of Mr. Strong's suit, which the court independently verified); *id.* at 13 n.7 (same). He also relies on non-existent cases, such as a fake case by the name of *Brands v. United States*. ECF No. 21 at 6-7; *see also* ECF No. 33 at 4 n.2 (government pointing out eight other nonexistent cases cited throughout Mr. Strong's proposed second amended complaint, which the court independently verified do not exist).

Fake quotations and case citations do not help the court evaluate a party's claims, whether the party is represented by counsel or not. And even unrepresented parties can be sanctioned for providing fake information to the court. *See Sanders v. United States*, 176 Fed. Cl. 163, 169-70 (2025) (warning a pro se litigant that AI-generated fake citations waste the court's resources and

can result in sanctions); *Kruse v. Karlen*, 692 S.W.3d 43, 46, 54 (Mo. Ct. App. 2024) (sanctioning a pro se litigant for AI-hallucinated citations and imposing a $10,000 fine for the other party's time in having to respond to the fake information); *Morgan v. Community Against Violence*, No. 23-cv-353, 2024 WL 639860, at *7 (D.N.M. Feb. 15, 2024) (requiring a pro se plaintiff to show cause for why she shouldn't be prohibited from proceeding without representation after citing nonexistent cases, among other issues). Whether or not Mr. Strong's fake quotations and case citations are a result of artificial intelligence hallucinations, Mr. Strong is warned that he may be sanctioned in the future for filing court papers with false information.

As for the unpaid overtime, Mr. Strong does not allege that he reported the overtime work to his office. *See* ECF No. 16 at 22-23 [¶¶37-43]; ECF No. 27 at 45-47. To allege a civilian pay claim, Mr. Strong would have to show that the alleged overtime was "known or reasonably should have been known by the employer to have been performed." *Bull v. United States*, 68 Fed. Cl. 212, 222 (2005). Because Mr. Strong does not allege that the office knew of the overtime hours he alleges he worked, the complaint fails to state a claim for the October 2022 date as well.

### F. The pending motions to supplement pleadings and to take judicial notice would not resolve the failures of the existing pleadings

Finally, the court will deny as futile Mr. Strong's pending motions to supplement and amend his complaint and to take judicial notice of certain documents. ECF Nos. 26, 28, 31, 40, 41. The proposed supplements and proposed second amended complaint contain additional post-resignation harms. ECF No. 39 at 7, 13-15, 23; ECF No. 31-1 at 13 [¶¶31-32], 16 [¶51], 26-27 [¶¶37-42], 48-49; ECF No. 31-2 at 24-89, 162. As already noted, harms stemming from Mr. Strong's resignation do not state a claim for breach of contract because they do not relate to the government's obligations as an employer under the settlement agreement. *See Indiana Michigan Power*, 422 F.3d at 1373; *Zulueta*, 2013 WL 363389, at *7. Mr. Strong already alleged the failure to pay

wages and fraudulent inducement of the settlement agreement in his first amended complaint. ECF No. 16 at 1 [¶3], 5. A second amended complaint or supplement re-alleging those harms, *see* ECF No. 31-1 at 10 [¶¶7-8], 12 [¶25], 16 [¶¶45, 48], 19-20 [¶¶8-13], 24-25 [¶¶28-36]; ECF No. 31-2 at 156, would not affect the outcome. As already discussed, those allegations fail to state a claim, regardless of the amount of detail Mr. Strong might add. The documents in Mr. Strong's motion for judicial notice likewise do not include new information that would change the nature of his claims. ECF No. 41. The pending motions are therefore futile.

### III.   Conclusion

For the reasons stated above, this court **grants** the government's motion to dismiss (ECF No. 18) and **dismisses Mr. Strong's complaint**. The court also **denies** Mr. Strong's pending motions to supplement and amend pleadings and to take judicial notice (ECF Nos. 26, 28, 31, 40, 41) as futile. The clerk of the court shall enter judgment accordingly.

**IT IS SO ORDERED.**

/s/ Molly R. Silfen
MOLLY R. SILFEN
Judge